UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JACKSON LABORATORY, )<br>)<br>    *Plaintiff* )<br>v. )<br>)<br>NANJING UNIVERSITY, NANJING )<br>BIOMEDICAL RESEARCH INSTITUTE )<br>OF NANJING UNIVERSITY, and )<br>NANJING UNIVERSITY MODEL )<br>ANIMAL RESEARCH CENTER, )<br>)<br>    *Defendants* ) | No. 1:17-cv-00363-GZS |

*MEMORANDUM DECISION AND ORDER ON MOTION*
*FOR COURT-ORDERED SERVICE*

In this petition to compel arbitration to resolve a contract dispute, the plaintiff moves for leave to serve process via email and personal service pursuant to Rules 4(f)(3) and 4(h) of the Federal Rules of Civil Procedure on three related defendants domiciled in China. *See* Plaintiff's Motion for Court-Ordered Service of Complaint and Petition to Compel Arbitration ("Motion") (ECF No. 4) at 1-2, 4-5. I grant the motion for the reasons that follow.

### I. Applicable Legal Standard

Rule 4(f) provides as follows:

> **(f) Serving an Individual in a Foreign Country**. Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:
>
> **(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> **(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

1

    **(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
    **(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or
    **(C)** unless prohibited by the foreign country's law, by:
      **(i)** delivering a copy of the summons and of the complaint to the individual personally; or
      **(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
  **(3)** by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

  Rule 4(h), which deals specifically with service of process on corporations, partnerships, or associations, incorporates the language of Rule 4(f) by stating that service is permissible "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2).

  "Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1017-18 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). *See also, e.g., D.Light Design, Inc. v. Boxin Solar Co.*, No. C-13-5988 EMC, 2015 WL 526835, at *1 (N.D. Cal. Feb. 6, 2015) ("To establish that service of process by email is appropriate in a given case, a plaintiff must show that (1) international agreement does not prohibit service by email; and (2) that service by email is reasonably calculated to provide actual notice to the defendant.") (citation and internal quotation marks omitted).

## II. Factual Background

In its motion, the plaintiff alleges the following facts:

The plaintiff, a Maine corporation, is a world leader in mammalian genetics and human genomics. *See* Motion at 2; Complaint and Petition To Compel Arbitration ("Complaint") (ECF No. 1) ¶¶ 1, 8. It maintains a repository of more than 8,000 strains of genetically modified mice for use in biomedical and disease research worldwide. *See id*. When the plaintiff sells its mice to customers, it prohibits the recipients from re-selling the mice or their progeny commercially. *See* Motion at 2. As early as August 2002, the defendants[1] purchased mice from the plaintiff, agreeing both to abide by the plaintiff's restrictions on the use and commercial re-sale of the mice and their progeny and to arbitrate any dispute arising under the parties' agreement in Hancock County, Maine. *See id.* at 3. In addition, on August 15, 2004, Nanjing MARC executed a Use of Strains Agreement (the "2004 Agreement") confirming that the mice previously purchased and to be purchased from the plaintiff were to be used "for the sole purpose of conducting internal research." Complaint ¶ 22. The 2004 Agreement also contained a provision for the arbitration of disputes in Hancock County, Maine. *See id*. ¶ 23.

The plaintiff discovered that the defendants had been offering for sale, and selling, the progeny of the mice it had provided them. *See* Motion at 3. It sent the defendants cease-and-desist letters by email and hand-delivery in April 2016 and again in June 2017, but received no indication that the defendants had ceased that conduct. *See id.* The plaintiff then sent the defendants a letter, again by email and hand-delivery, demanding that they participate in arbitration to resolve the

---

[1] The plaintiff seeks to serve three separate entities that it claims are "closely-related Chinese corporate and educational entities[.]" Motion at 4 n.1. These are Nanjing University, the Nanjing Biomedical Research Institute of Nanjing University ("NBRI"), and the Nanjing University Model Animal Research Center ("Nanjing MARC"). *See id.*; *see also* Complaint at 1.

3

dispute per paragraph 13 of the 2004 Agreement. *See id.* In response, on July 14, 2017, an attorney from the law firm of Miller Canfield, who stated that he represented NBRI, contacted the plaintiff.[2] *See id.* at 3-4. Emails were exchanged between the Miller Canfield attorney and counsel for the plaintiff wherein the Miller Canfield attorney "expressed a desire to resolve any dispute over the mice at issue through the Parties' respective attorneys[.]" *Id.* at 4. The parties' counsel also discussed the issue by telephone. *See id.*

Ultimately, when the plaintiff received no indication that the defendants were willing to engage in arbitration as repeatedly requested, it filed the Complaint on September 18, 2017. *See* Complaint. The plaintiff provided a copy of the Complaint to the attorneys at Miller Canfield, along with a request that they accept service on the defendants' behalf, accompanied by a waiver of service form for each of the defendants. *See* Motion at 4. After further correspondence, one of the Miller Canfield attorneys "indicated – despite having been involved in discussions with [the plaintiff's] attorney about the very same issue for several months prior – that he had not been retained to represent Nanjing 'in the lawsuit' and could not accept service on its behalf." *Id.*

The plaintiff now files the instant motion seeking court-ordered service.

### III. Discussion

The plaintiff seeks to serve the defendants by personal service, with hand-delivery of the complaint to the President of Nanjing University, the Director of NBRI, the Professor and Principal Investigator for Nanjing MARC, and the Deputy Director and Chief of Animal Facility for Nanjing MARC. *See id.* at 1-2. The plaintiff also seeks to serve all but the University's President by email. *See id*. Finally, the plaintiff seeks to serve two lawyers at Miller Canfield, who represent "at least

---

[2] The plaintiff states that the "Miller Canfield lawyer appeared to represent all three [Nanjing University entities][,]" Motion at 4 n.1, and that the lawyer "later referred to his client as 'Nanjing'" and "[e]lsewhere . . . wrote regarding 'Nanjing Univ[ersity].'" *Id.*

4

NBRI[,]" by email. *See id*. at 1. The plaintiff has provided the physical and email addresses it proposes to use. *See id.* at 1-2. For the reasons that follow, I conclude that the proposed service comports with the requirements of both Rule 4(f)(3) and due process.

### A. Rule 4(f)(3)

The plaintiff argues that the methods of service it proposes "are designed to both avoid the unnecessary complexities and expenses associated with service under the Hague Convention in China but also to allow [the plaintiff] to proceed efficiently to the agreed-upon arbitration with minimal delay." *Id.* at 5. It correctly notes that, in *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22 (D. Me. 2001), this court held that, while Rule 4(f)(1) authorizes service on a foreign defendant by an internationally agreed-to means of service, including methods authorized by the Hague Convention, the rule does not *require* compliance with the Hague Convention nor otherwise require a plaintiff to exhaust other available service methods before seeking court-ordered service pursuant to Rule 4(f)(3). *See id.* at 6.

In *Forum Financial*, the plaintiffs moved for court-directed service pursuant to Rule 4(f)(3) following unsuccessful attempts to serve a defendant who resided in Russia. *See Forum Financial*, 199 F.R.D. at 22. The defendants argued that such court-directed service was "extraordinary relief[,]" unavailable to the plaintiffs until earlier attempts at service under "any applicable international agreement have proven unsuccessful." *Id.* at 23 (internal quotation marks omitted). This court ruled otherwise, explaining:

> [N]othing in Rule 4(f) or its advisory committee notes indicates that court-directed service under Rule 4(f)(3) is 'extraordinary relief.' By its plain language and syntax, Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under subsections (1) and (2). Rule 4(f)'s plain language unambiguously indicates that the only limit it imposes court-directed service under Rule 4(f)(3) is that the means must not be prohibited by international agreement.

*Id.* at 23-24 (footnote omitted).

Because no international agreement prohibited the court from directing service in the manner requested by the plaintiffs (*via* certified mail to the defendant's attorney in New York City, *see id.* at 22-23), the court held that the requisites of Rule 4(f)(3) had been satisfied, *see id.* at 24.

The same is true here. The plaintiff provides caselaw support for the proposition that the proposed methods of service – hand-delivery and email – do not violate international agreement, specifically, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Service Convention"), of which China is a signatory. *See* Motion at 9; *In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, 2008 WL 2415186, at *1 (N.D. Cal. June 12, 2008). The *LDK* court acknowledged that China has objected to Article 10 of the Service Convention, which allows, in relevant part, for service by postal channels. *See LDK*, 2008 WL 2415186, at *1. However, the court held that service by hand-delivery to the defendant's California office was not a form of service through postal channels and, therefore, was permissible pursuant to Rule 4(f)(3). *See id.* at *3.

As the plaintiff indicates, *see* Motion at 9-10, a number of courts also have held that service by email is permissible pursuant to Rule 4(f)(3) on defendants residing in China and other countries that have objected to Article 10 of the Service Convention, *see, e.g.*, *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) (permitting service by email on Chinese corporation pursuant to Rule 4(f)(3); concluding that objections to the specific forms of service permitted by Article 10, including service by postal mail, do not cover "service by other alternative means, including email"); *FTC v. Pecon Software Ltd.*, Nos. 12 Civ. 7186(PAE), 12 Civ. 7188(PAE), 12 Civ. 7191(PAE), 12 Civ. 7192(PAE), 12 Civ. 7195(PAE), 2013 WL 4016272, at *4-5 (S.D.N.Y. Aug. 7, 2013) (holding that India's objection to Article 10 of the Service Convention did not prevent service by email pursuant to Rule 4(f)(3); noting; "Numerous courts

have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (permitting service by email pursuant to Rule 4(f)(3) on defendants located in countries that had objected to Article 10 of Service Convention). These cases, in my view, are better-reasoned than those holding that emails constitute "postal channels" for purposes of Article 10. *See, e.g., Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (rejecting plaintiff's attempt to distinguish email from the "postal channels" referred to in the text of Article 10, although acknowledging that "[t]here might be some circumstances under which such a distinction could be drawn").

### B. Due Process

The plaintiff further persuasively argues that service of the Nanjing defendants in hand and by email will not offend due process in that the defendants are likely to receive notice through those means and, in fact, are already aware of the filing of this suit. *See* Motion at 10.

The defendants have received multiple cease-and-desist letters by hand-delivery and email to which they have responded both directly and through the law firm of Miller Canfield. *See id*. On September 20, 2017, the plaintiff placed Miller Canfield on notice of the existence of this suit by providing the defendants' self-identified attorneys with a copy of the Complaint and by seeking their consent to accept service. *See id*. at 4 & Exh. C (ECF No. 4-3) thereto at Page ID # 78. A Miller Canfield attorney responded the next day, "We will contact Nanjing and see if they are going to retain us to represent them in this lawsuit." Exh. C at Page ID ## 77-78.

Furthermore, on October 1, 2017, NBRI posted comments about this suit on a web page. *See* Motion at 10 & Exh. D (ECF No. 4-4) thereto. According to a translation included with that

7

exhibit, NBRI titled the web page, "Statement in regard to The Jackson Laboratory Suing Nanjing Biomedical Research Institute of Nanjing University." Exh. D at Page ID # 81. NBRI stated, *inter alia*: "In September, The Jackson Laboratory sued the Nanjing Biomedical Research Institute of Nanjing University for infringing the intellectual property" of the strain of mice it provided. *Id.* It noted, "We would not like to go into a[] lawsuit, but we are not afraid to." *Id.*

On October 23, 2017, after follow-up inquiries by the plaintiff's counsel, one of the Miller Canfield attorneys informed her that he did not have authority to accept service, was told that "Nanjing is considering using a different firm for the lawsuit[,]" and hoped to have "a definite answer within about a week." Exh. C at Page ID ## 76-77. No further communication is attached to the plaintiff's motion. *See* Motion.

When a form of communication has previously been utilized successfully by the parties, it remains a proper channel for service of process. *See, e.g., D.Light Design*, 2015 WL 526835, at *2-3 (service by email appropriate under Rule 4(f)(3) when it was a past mode of communication between the parties and did not bounce back as undeliverable); *Hydentra Hlp Int. Ltd. v. Porn69.org*, No.: CV15-00451-PHX DGC, 2015 WL 8064770, at *1 (D. Ariz. Dec. 7, 2015) (same, with respect to service in Maine pursuant to Fed. R. Civ. P. 4(e)(1)).

Service on all of the defendants by hand-delivery in China and on all but one of them by email is "'reasonably calculated, under all the circumstances," not only "to apprise [the defendants] of the pendency of [this] action[,]" of which they seemingly are already aware, but also to "afford them an opportunity to present their objections.'" *Rio Properties*, 284 F.3d at 1017-18 (quoting *Mullane*, 339 U.S. at 314).

That the Miller Canfield attorneys previously declined to accept service of process on the defendants' behalf, indicating that they were not authorized to do so, might raise concerns that

8

service through emails to them is not reasonably calculated to apprise the defendants of the pendency of this action. As this court acknowledged in *Forum Financial*, service on an attorney who is not authorized to accept such service "is generally inappropriate because it risks adversely affecting the attorney-client relationship[,]" as a result of which courts have found that service on a party's attorney "is not effective unless that attorney is authorized to accept service." *Forum Financial*, 199 F.R.D. at 24.

Yet, this court distinguished that line of cases on the basis that "they do not involve court-directed service as is requested here, but only the parties' own attempts at service without prior court authorization." *Id*. It reasoned, "Where, as here, a party moves for court-directed service under Rule 4(f)(3), the court's decision to grant or deny the motion after careful consideration of the particular facts of the case can safeguard the attorney-client relationship against any unwarranted intrusion." *Id*.

This court deemed such an order warranted in *Forum Financial*, despite the defendant's attorney's representation that he was not authorized to accept service, "given [the defendant's] efforts to evade service in Russia and [the attorney's] recent acceptance of service on [the defendant's] behalf in a case also involving [the defendant's] business dealings in Russia." *Id*. at 24-25 (citations omitted). The court added that the attorney had not argued that "sending service to him would fail to give [the defendant] fair notice" or asserted "that he [was] not in contact with [the defendant]." *Id*. at 25. *See also Lyman Morse Boatbuilding Co. v. Lee*, No. 2:10-cv-337-DBH, 2011 WL 52509, at *3 (D. Me. Jan. 6, 2011) (ordering service on attorneys of defendant residing in Brazil when, "[b]y instructing his attorneys not to accept service on his behalf, the defendant can only be said to be avoiding service of process with respect to a claim and an action of which he is already well aware").

9

In this case, as well, there are indications that the defendants are evading service, and there is no reason to believe that court-directed service on the Miller Canfield attorneys, who have successfully communicated with the defendants or, at the least, NBRI, regarding this dispute, would fail to reach at least NBRI.[3]

Service by the totality of redundant means proposed by the plaintiff is reasonably calculated to afford the defendants notice of, and an opportunity to participate in, the instant suit seeking to compel arbitration.

### IV. Conclusion

For the foregoing reasons, the motion is **GRANTED**, and the plaintiff is **DIRECTED** to serve the Complaint and Petition to Compel Arbitration, together with this Memorandum Decision and Order, on the defendants in the manner specified on pages 1-2 of its motion.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 29th day of January, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[3] Beyond this, as the plaintiff observes, *see* Motion at 7, two additional facts weigh in favor of the grant of the motion: that the defendants consented to jurisdiction in Maine and that the plaintiff seeks to compel arbitration, *see, e.g., Novorossiysk Shipping Co. v. China Pac. Prop. Ins. Co.,* No. 06 Civ. 2312(WHP), 2006 WL 3055964, at *1-2 (S.D.N.Y. Apr. 17, 2006) (observing, in granting plaintiff's motion for court-directed service pursuant to Rule 4(f)(3) of its petition and complaint to compel arbitration, that "where a party has consented to jurisdiction, the sole purpose of process is to provide notice that proceedings have commenced[,]" and, "in the context of arbitration, the standards for service are liberally construed").